SHAMROCK REALTY COMPANY, INC. *vs.* DAVID O'BRIEN.

No. 07-P-365.

Suffolk. February 14, 2008. - July 23, 2008.

Present: KAFKER, TRAINOR, & SIKORA, JJ.

*Limitations, Statute of. Practice, Civil,* Statute of limitations. *Conflict of Laws. Guaranty.*

In an action to recover on a personal guarantee, filed in Massachusetts more than eight years after the action accrued, the trial court judge properly applied the six-year statute of limitations contained in G. L. c. 260, § 2, to bar the action, where, under the analysis required by Restatement (Second) of Conflict of Laws § 142(1) (Supp. 1989), there were no exceptional circumstances making such a result unreasonable, given the provisions in the guarantee (including the defendant's irrevocable consent to personal jurisdiction in Rhode Island) demonstrating that Rhode Island was the intended State for resolving any disputes, and given the plaintiff's failure to identify any reason why bringing the action in Rhode Island (which had a ten-year statute of limitations governing such claims) would have been extremely inconvenient for either party. [254-258]

CIVIL ACTION commenced in the Superior Court Department on September 17, 2002.

The case was heard by *Thomas E. Connolly,* J., on a motion for summary judgment, and a second motion for summary judgment and a motion for reconsideration were also considered by him.

*Lynn M. Whitney* for the plaintiff.

*James L. Rudolph* (*Thomas K. Alexander* with him) for the defendant.

KAFKER, J. The issue presented in this action to recover on a personal guarantee is whether to apply the six-year Massachusetts statute of limitations, G. L. c. 260, § 2, barring the claim or the ten-year Rhode Island statute of limitations, R.I. Gen. Laws § 9-1-13(a) (2006), permitting the claim to proceed. Applying the analysis set forth in Restatement (Second) of Conflict of

Laws § 142(1) (Supp. 1989), we conclude that the claim is barred and affirm the decision of the Superior Court judge allowing summary judgment for the defendant.

*Background.* In 1990, Joseph X. O'Brien, Jr., died intestate. At the time of his death, Joseph O'Brien owned Starboard Tack, Ltd. (Starboard Tack), a Rhode Island corporation, and was obligated to Newport Federal Savings Bank (Newport Bank) on two outstanding notes that were secured in part by the real property of Starboard Tack. Upon Joseph O'Brien's death, ownership of Starboard Tack passed to his parents, who then conveyed it to his siblings, defendant David O'Brien and Damien O'Brien.

In 1993, at least one of the notes went into default and Newport Bank scheduled a foreclosure sale. On March 31, 1993, Starboard Tack entered into an agreement with John Gullison and Shamrock Realty Company, Inc. (Shamrock), a Rhode Island corporation wholly owned by Gullison, to avoid bankruptcy. According to the agreement, Gullison or Shamrock (or both) essentially agreed to provide money to Starboard Tack to purchase at auction the Starboard Tack property that secured the Newport Bank notes. The next day, GFT Investment Company, a lending company also owned by Gullison, purchased the notes and mortgages from Newport Bank. These notes and mortgages were transferred to Starboard Tack in exchange for $150,000 during a foreclosure sale.

A new loan agreement was entered into on April 27, 1993. Starboard Tack executed a promissory note wherein it agreed to pay Shamrock approximately $240,000. The loan agreement provided that "[t]his Agreement and the Notes shall be construed in accordance with and governed by the laws of the State of Rhode Island." That same day, David O'Brien signed a personal guarantee of the $240,000 promissory note.[1]

The guarantee did not contain a choice of law provision. It

---

[1]The judge, relying in part on supplementary filings by the defendant, determined that David O'Brien was living in Massachusetts at the time of the signing of the agreement and signed the document in Massachusetts, returning it to Rhode Island by way of facsimile and mail. These facts, however, are not material to our conclusion that the Massachusetts statute of limitations should be applied in the instant case.

did contain a provision in which the guarantor accepted personal jurisdiction in Rhode Island. Paragraph 12 of the personal guarantee reads:

> "IN THE EVENT THAT LENDER BRINGS ANY AC-TION OR PROCEEDING IN CONNECTION HEREWITH IN ANY COURT OF RECORD OF THE STATE OF RHODE ISLAND, OR ANY UNITED STATES DISTRICT COURT LOCATED IN SAID STATE, GUARANTOR HEREBY IRREVOCABLY CONSENTS TO AND CON-FERS PERSONAL JURISDICTION OF SUCH COURT OVER GUARANTOR BY SUCH COURT."

The guarantor also expressly waived "any defenses available to a surety under the laws of the State of Rhode Island."

On approximately October 27, 1993, the promissory note from Starboard Tack to Shamrock went into default. In March of 1994, the real estate, personal property, fixtures, and liquor license of Starboard Tack were foreclosed upon. The plaintiff claimed a deficiency balance. More than eight years later, on September 17, 2002, this action was filed against the defendant in the Superior Court for Suffolk County to enforce the personal guarantee.[2]

On or around September 24, 2003, cross motions for summary judgment were filed. A hearing was held on both motions on December 16, 2003. A Superior Court judge allowed the plaintiff's motion for summary judgment by way of handwritten endorsement on July 1, 2004.[3] The defendant filed a motion for reconsideration on October 6, 2004. On October 18, 2004, the

---

[2]Damien O'Brien, the defendant's sister, also signed the promissory note personally guaranteeing the $240,000 note. The case against her was dismissed because of the plaintiff's failure to make timely service of process upon her. She is not a defendant in this case.

[3]There was, however, no entry of final judgment. Consequently, the plaintiff's argument that the defendant's motion for reconsideration was untimely based on Mass.R.Civ.P. 59(e), 365 Mass. 828 (1974), is without merit. See Mass.R. Civ.P. 58, as amended, 371 Mass. 908 (1977); Smith & Zobel, Rules Practice § 58 (2d ed. 2007). See also *Peterson* v. *Hopson*, 306 Mass. 597, 601 (1940) ("[t]hough there is no duty to reconsider a case, an issue, or a question of fact or law, once decided, the power to do so remains in the court until final judgment or decree").

plaintiff filed an opposition to this motion and a motion for attorney's fees.[4]

On March 29, 2006, in a memorandum and order, the Superior Court judge vacated his July 1, 2004, grant of summary judgment to the plaintiff. Upon reconsideration, he denied summary judgment to the plaintiff and granted the defendant's motion for summary judgment. In his memorandum, the judge explained that his initial decision was based upon the incorrect assumption that Rhode Island, rather than Massachusetts, law applied. Upon reconsideration, the judge found Massachusetts law to govern the contract, and because the six-year Massachusetts statute of limitations had run by the time the plaintiff brought suit, the judge ordered that the defendant's cross motion for summary judgment be allowed.[5]

On April 11, 2006, the plaintiff filed various motions for reconsideration of the judge's order allowing summary judgment for the defendant. Those motions were denied by way of handwritten endorsements by the motion judge on April 25, 2006, and May 11, 2006. Judgment entered on June 12, 2006, and on June 30, 2006, the plaintiff timely appealed.

*Discussion.* The deficiency claim in the instant case was filed more than eight years after the action accrued, which would have been untimely under the six-year Massachusetts statute of limitations but timely under the ten-year Rhode Island statute. The question is which statute of limitations applies.

---

[4]On October 21, 2004, another Superior Court judge issued a procedural order directing that the case would go forward for an assessment of damages if count II, seeking recovery by the plaintiff of certain personal property, was dismissed. Accordingly, the plaintiff's motion to dismiss count II was allowed on December 7, 2004.

On July 20, 2005, the plaintiff's motion to mark a previously filed hearing on assessment of damages was allowed. On November 1, 2005, the plaintiff filed an affidavit of itemized damages, attorney's fees, and costs. On November 22, 2005, during the hearing on the assessment of damages, the judge suggested mediation. On February 22, 2006, the parties were unsuccessful at mediating the matter. On March 21, 2006, the defendant sent a letter to the Superior Court judge explaining that mediation was not successful and asking him to rule on the motion for reconsideration.

[5]On March 29, 2006, the day of the summary judgment decision, counsel for the parties were in a further hearing on assessment of damages before a third Superior Court judge. That judge refused to relitigate the summary judgment issues and took the assessment of damages under advisement.

In *New England Tel. & Tel. Co.* v. *Gourdeau Constr. Co.*, 419 Mass. 658, 664 (1995) (*Gourdeau*), the Supreme Judicial Court "departed from the traditional rule of law that characterized limitations statutes as procedural and automatically applied the statute of limitations of the forum State." *Nierman* v. *Hyatt Corp.*, 441 Mass. 693, 695 (2004). The court "adopted instead a functional approach that treats the issue [of which statute of limitations to apply] as a choice of law question, as stated in the Restatement (Second) of Conflict of Laws § 142." *Ibid.*

Section 142 of the Restatement (Second) of Conflict of Laws provides:

> "Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6.[6] In general, unless the exceptional circumstances of the case make such a result unreasonable:

---

[6]Restatement (Second) of Conflict of Laws § 6 (1971) states:

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied."

We do not expressly apply § 6 of the Restatement (Second) of Conflict of Laws in this case because, as explained by the Supreme Judicial Court, "Section 142 first states that the principles of § 6 will determine whether a claim may be maintained against the defense of the statute of limitations," but "[t]he balance of § 142 seems to set forth the way in which the principles of § 6 will be implemented in almost all instances." *Gourdeau*, 419 Mass. at 664 n.6.

"(1) The forum will apply its own statute of limitations barring the claim.

"(2) The forum will apply its own statute of limitations permitting the claim unless:

"(a) maintenance of the claim would serve no substantial interest of the forum; and

"(b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence."

In the instant case, the Massachusetts statute of limitations would bar, and not permit, the claim, thus invoking the analysis called for by § 142(1), not § 142(2), of the Restatement (Second) of Conflict of Laws.[7] As provided in § 142(1) of the Restatement (Second) of Conflict of Laws, the forum State will apply its own statute of limitations barring the claim unless the exceptional circumstances of the case make such a result unreasonable.

As explained in the Restatement, "[a] state has a substantial interest in preventing the prosecution in its courts of claims which it deems to be 'stale.' " Restatement (Second) of Conflict of Laws § 142 comment f. See Reese, The Second Restatement of Conflict of Laws Revisited, 34 Mercer L. Rev. 501, 505-506 (1983) (discussion of why forums enforce their own shorter statutes of limitations to avoid the prosecution of stale claims). Also, where the forum State has the shorter statute of limitations "dismissal of an action on statute of limitations grounds is unlikely to visit unfair hardship upon the plaintiff since such a dismissal will not bar him from maintaining a suit on the same claim in another state." *Ibid.* Additionally, the "refusal of a court to entertain a claim that is barred by its [own shorter] statute of limitations is unlikely to impinge seriously upon the interests of another state." Restatement (Second) of Conflict of Laws § 142 comment f. Consequently, "[t]here will be rare situations where the forum

---

[7]In *Gourdeau*, 419 Mass. at 659; *Kahn* v. *Royal Ins. Co.*, 429 Mass. 572, 573 (1999); and *Nierman* v. *Hyatt Corp.*, 441 Mass. 693, 694 (2004), the Massachusetts statute of limitations would have permitted and not barred the cases from proceeding, thereby requiring an analysis under § 142(2), which presents a different set of considerations. See Reese, The Second Restatement of Conflict of Laws Revisited, 34 Mercer L. Rev. 501, 505-506 (1983).

will entertain a claim that is barred by its own statute of limitations but not by that of some other state." *Ibid.*

According to the Restatement (Second) of Conflict of Laws § 142 comment f, those rare situations might occur when "through no fault of the plaintiff an alternative forum is not available, as, for example, where jurisdiction could not be obtained over the defendant in any state other than that of the forum." In the instant case, the defendant irrevocably consented in the guarantee agreement to personal jurisdiction in Rhode Island, and the plaintiff has presented no evidence to indicate that Rhode Island, the alternative state, was unavailable. In fact, Rhode Island appears from the personal guarantee to be the intended State for resolving any disputes under the guarantee.

Another exception to the general rule barring the claim under § 142(1) might exist when the alternative State would be greatly inconvenient and "no significant forum policy would be infringed if the claim were allowed to proceed." Restatement (Second) of Conflict of Laws § 142 comment f. The plaintiff has identified no reason why Rhode Island would have been "extremely inconvenient" for either party. *Ibid.*[8]

The plaintiff relies heavily on *Newburyport Five Cents Sav. Bank* v. *MacDonald*, 48 Mass. App. Ct. 904, 907 (1999) (*Newburyport*), a rescript opinion of this court in which we applied a twenty-year New Hampshire statute of limitations allowing the case to proceed instead of a two-year Massachusetts statute that would have barred the action. We did so, however, without applying § 142(1) of the Restatement (Second) of Conflict of Laws. As we conclude that § 142(1) controls our analysis, we reject the plaintiff's arguments based on *Newburyport.*[9]

*Conclusion.* In sum, we conclude that the decision regarding

[8]The second part of the inquiry — whether no significant forum policy would be infringed — focuses on two factors: "The first involves the extent, if any, to which the parties and the occurrence were related to the state of the forum. The more substantial this relationship, the greater is the likelihood that forum policy will be found to require dismissal of the claim under the forum's statute of limitations [barring stale claims] . . . . The second factor has to do with the difference between the length of the forum's own statute of limitations and that of the other state." Restatement (Second) of Conflict of Laws § 142 comment f. The larger the difference, the more likely the state will have an interest in enforcing its own shorter limitations period. *Ibid.*

[9]We note that *Newburyport* focused on the parties' choice of law. That

the statute of limitations in the instant case is governed by § 142(1) of the Restatement (Second) of Conflict of Laws. The Superior Court judge properly applied Massachusetts's shorter statute of limitations barring the claim, as there were no exceptional circumstances making such a result unreasonable.

*Judgment affirmed.*

---

choice is not, however, controlling "with particular reference to the statute of limitations issue." *Gourdeau*, 419 Mass. at 662. In *Gourdeau*, for example, the contract was governed by New Hampshire law, but the court applied the Massachusetts statute of limitations permitting the claim to proceed. Moreover, in the instant case, the guarantee agreement did not expressly contain a choice of law provision. Rather, it contained a clause accepting personal jurisdiction in Rhode Island. As explained *supra*, such a clause supports application of a State's statute of limitations barring a claim from proceeding because it facilitates suit in the alternative forum with the longer statute of limitations.